UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN  DIVISION

_____

HOWARD JACK-BEY,

                  Plaintiff,                      Case No. 2:13-cv-216

v.                                    Honorable Robert Holmes Bell

LINDA TRIBLEY et al.,

                  Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Tribley, Heyns, Johnson, Quigley, Kivisto, Veda, Buck and Suzik. The Court will serve the complaint against Defendants Janssen and Waite.

**Factual Allegations**

Plaintiff is incarcerated in the Ojibway Correctional Facility (OCF). In his *pro se* complaint, Plaintiff sues Michigan Department of Corrections (MDOC) Director Daniel Heyns, Central Facilities Administrator Daphne Johnson, and the following OCF employees: Warden Linda Tribley, Deputy Warden Daniel Quigley, Classification Director J. Kivisto, Assistant Resident Unit Supervisor M. L. Veda, Shar Buck, Corrections Officer (Unknown) Janssen, and Lieutenants (Unknown) Waite and G. Suzik.

Plaintiff was convicted in the Wayne County Circuit Court of four counts of assault with intent to rob while armed, MICH. COMP. LAWS § 750.89, and one count of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. He was sentenced on February 26, 1990, to concurrent prison terms of ten to twenty years for the assault convictions and a consecutive two-year term for the felony-firearm conviction. During his subsequent incarceration, Petitioner was convicted in the Muskegon County Circuit Court of possession of a weapon in prison. On May 25, 1994, Petitioner was sentenced as an habitual offender, MICH. COMP. LAWS § 769.12, to imprisonment of fifteen to thirty years.

During the early years of his incarceration, Plaintiff forfeited a substantial number of Good Time/Disciplinary Credits as the result of major misconduct convictions. After many years of being major misconduct free, Plaintiff was granted restoration of all available Good Time/Disciplinary credits. After restoration of the credits, Plaintiff had a Suggested Good Time/Disciplinary Release (STG) date of November 27, 2012, a Regular Good Time/Disciplinary Release (RTG) date of February 19, 2013 and a calendar minimum of May 29, 2015. (*See* 1/12/12 Time Review and Disposition Report, docket #1-4, Ex. O, Page ID#116.) Plaintiff contends that he

had a liberty interest in being interviewed by the parole board before his first STG date. At the time

his credits were restored, Plaintiff was incarcerated at the Lakeland Correctional Facility (LCF).

Plaintiff alleges that after the restoration of his Good Time/Disciplinary Credits, LCF Warden Carol

Howes indicated that she would recommend him for early parole consideration[1] and further advised

that Plaintiff would be transferred to Jackson Cooper Street Correctional Facility (JCS) for a parole

interview. Plaintiff was transferred to JCS on February 22, 2012.

　　　　　While at JCS, Plaintiff continued to pursue early consideration by the parole board.

Plaintiff believed that he was making progress toward that goal when he was informed on May 9,

2012, that he was being transferred to OCF. Plaintiff was unhappy about the transfer because he

believed that prisoners only were sent to the Upper Peninsula as punishment for bad behavior and

it would be a hardship on his wife and mother for him to be so far away. Upon his arrival at OCF,

Plaintiff was informed that he was transferred there at the request of Defendant Warden Tribley to

facilitate the Legal Writer Program. Plaintiff spoke with Tribley and explained that he did not want

to be at OCF. She responded, "You've had your visits, either you work the legal writer assignment

or you just sit here and suffer, it's your choice, either way you are here for the duration." (Compl.,

¶ 35, Page ID#13.) Plaintiff decided to accept the work assignment, rather than suffer the

consequences of being placed on unemployable status.

---

[1] Under Michigan law, habitual offenders cannot be paroled before the expiration of their calendar minimum without the approval of the sentencing judge. *See* MDOC Policy Directive (PD) 03.01.102(A)(2) (eff. 8/1/1988). In order for a prisoner to seek parole consideration before the calendar minimum, MDOC policy provides:

> Staff shall instruct prisoners that they should contact their respective Program Classification committee or classification Director, and not the sentencing court, if they believe their case warrants parole consideration prior to the calendar minimum. If supported by the classification staff and by the Warden, the case shall be referred by the Warden to the Parole Board for consideration.

PD 03.01.02(H) (emphasis in original).

Plaintiff submitted requests to Defendant Tribley on May 31, 2012 and July 2, 2012, for a recommendation for early parole consideration. (*See* Requests to Linda Tribley, Ex. A, docket #1-3, Page ID##59-61.) Plaintiff received a response from Tribley on August 16, 2012, stating that Plaintiff was not eligible for removal from habitual status until he completed the Phase 2 drug abuse program. On July 25, 2012, Plaintiff submitted another request concerning early parole consideration to Defendant Kavisto. (*See* Request to Kivisto, Ex. B, Page ID#63.) Kavisto returned the request to Plaintiff on July 30, stating that Plaintiff had to complete the Phase 2 drug program. (*See* Kivisto Response, Ex. C, Page ID#65.) Plaintiff contends that Phase 1 and 2 did not exist when he was incarcerated in 1990, and that changing or adding new program requirements violates MDOC policy.

Notwithstanding his objection to the Phase 2 requirement, Plaintiff sought admission to the program and was informed that he was on the waiting list. Plaintiff filed a Step I grievance concerning the matter. Defendant Veda responded at Step I, stating that enrollment in the Phase 2 program is based on ERD/Calendar minimum dates and that there was no basis for moving Petitioner ahead of other prisoners who had earlier release dates than Plaintiff's calendar minimum of May 29, 2015. In addition to filing grievances, Plaintiff sent a request for Declaratory Ruling to Defendants Heyns and Johnson. (*See* Request for Declaratory Ruling, Ex. H, Page ID##90-91.) Plaintiff's request was denied on the ground that a prisoner's release on parole is discretionary with the parole board and that there was no right to parole. (*See* Response to Request for Declaratory Ruling, Ex. I, Page ID#94.)

Plaintiff concedes that he has no right to be released on parole, but maintains that he has a liberty interest in being considered for parole on his SGT/RGT dates. Plaintiff contends that

-4-

by denying him access to the Phase 2 drug abuse programming that would allow him to be considered for release on his SGT/RGT dates, Defendants Tribley, Heyns, Johnson, Kivisto, Veda and Buck violated his Fourteenth Amendment due process rights and his Eighth Amendment right against cruel and unusual punishment.[2]  Plaintiff further claims that Defendant Tribley had him transferred to OCF from JCS in retaliation for grievances filed and complaints made against staff in 2006, when Plaintiff was incarcerated at the Newberry Correctional Facility and Tribley was the Assistant Deputy Warden.

On July 28, 2012, Plaintiff was scheduled for the general library, which is located in the OCF school building.  Plaintiff brought a folder of materials for purposes of reading and studying his school materials from the University of the Moorish Science Temple of America (UMSTA) and researching a Moorish Science Temple of America (MSTA) class action lawsuit.  When Plaintiff arrived, Defendant Janssen instructed Plaintiff to step forward to officer's desk for a shakedown. Janssen looked through the folder and told Plaintiff that he could not bring in any personal materials.  Plaintiff told Janssen that he was violating Plaintiff's right to research and study his religion and the class action lawsuit.  Defendant Janssen allegedly became angry and responded, "I don't care sue me."  (Compl., ¶ 75, Page ID#25.)  Plaintiff told Janssen that he was going to file a grievance and left the building.

The following day, Plaintiff learned that Defendant Janssen wrote a Class III Misconduct Report against Plaintiff for violating a posted rule.  (*See* Class III Misconduct Report, Ex. BB, docket #1-5, Page ID#172.)  According to the report, Plaintiff violated school rule #2, which states that no personal items are allowed in the school.  Defendant Waite was the reviewing officer

---

[2]Plaintiff claims that as of mid 2012, Phase 2 programming no longer is available at OCF.

for the misconduct charge. The misconduct hearing was conducted on July 30, by Hearing Officer P. Ross. Ross found Plaintiff "not guilty" of the charge because Plaintiff was not going to school, but to a library call-out where personal paperwork was permitted. (*See* Class III Misconduct Hr'g Report, Ex. BB, Page ID#176.)

Later on July 30, Plaintiff was informed by Defendant Waite that Defendant Janssen wrote a Class II Misconduct Report against Plaintiff for insolence arising from the same incident on June 28. (*See* Class II Misconduct Report, Ex. AA, docket #1-4, Page ID#168.) According to the report, Plaintiff spoke to Janssen in a loud and angry tone threatened to sue him for "big money." (*Id*.) The Class II Misconduct Report was dated July 29, 2012, but Plaintiff contends that Janssen wrote it on July 30, after Plaintiff was found "not guilty" of the first charge. Plaintiff asserts that the misconduct violated MDOC policy requiring that the misconduct report be written as soon as possible after the violation occurs. Plaintiff claims that Defendants Janssen and Waite conspired to fabricate the Class II misconduct charge in retaliation for Plaintiff's verbal complaints and grievance against Janssen. Following a hearing on August 8, 2012, the hearing officer, Defendant Suzik, found Janssen's statement to be credible and found Plaintiff guilty of the offense. (See Class II Misconduct Hr'g Report, Ex. AA, Page ID#169.) Plaintiff was sanctioned with three days' loss of privileges. Plaintiff appealed the decision to Defendant Quigley, who denied the appeal on August 20, 2012. Plaintiff filed a grievance against Defendants Janssen, Waite, Suzik and Quigley, but it was rejected as non-grievable because it concerned a misconduct conviction. Plaintiff appealed to Step III, claiming staff corruption, retaliation and due process violations.

Plaintiff claims that Defendant Janssen violated his First Amendment rights of access to the courts and to practice his religion when he denied Plaintiff access to the law library. He

alleges that Janssen retaliated against him for attempting to resolve the matter by writing a false misconduct against him. Plaintiff claims that Defendants Janssen and Waite engaged in further retaliatory conduct when they conspired to charge him with a second misconduct after he was found not guilty of the first misconduct. Plaintiff contends that Defendants Suzik, Quigley and Tribley were apprised of the violations committed by Janssen and Waite, but failed to take reasonable actions to protect Plaintiff's constitutional rights. In addition, Plaintiff claims that his due process rights were violated in the proceedings on the Class II misconduct charge, for which he was found guilty. Plaintiff also asserts a violation of his Eighth Amendment right against cruel and unusual punishment and state law.

Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

### Discussion

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## I. **Denial of Early Parole Consideration**

### A. *Fourteenth Amendment Due Process*

Plaintiff contends that he had a liberty interest in being considered for early parole on his SGT/RGT dates. He claims that Defendants Tribley, Heyns, Johnson, Kivisto, Veda and Buck violated his Fourteenth Amendment due process rights by denying him access to Phase 2 drug abuse programming, which prevented him from qualifying for parole consideration on his SGT/RGT dates.

To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470

-8-

F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because prisoners have no constitutional or inherent right to parole or a parole hearing. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Greenholtz*, 442 U.S. at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. In a recent published decision, the Sixth Circuit reiterated the continuing validity of *Sweeton*. *See Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Consequently, Defendants' failure to provide Plaintiff with Phase 2 drug abuse programming, which caused Plaintiff to be ineligible for parole consideration on his STG/RGT dates, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

Plaintiff also fails to state due process claim arising from his inability to participate in the Phase 2 drug programming. Contrary to his assertions, Plaintiff does not have a federally cognizable liberty interest in participating in rehabilitative programs. Federal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison rehabilitation programs based on the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1995) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Plaintiff, therefore, fails to state a due process claim against Defendants.

B.    *Eighth Amendment*

Plaintiff also claims that Defendants' conduct, which prevented him from being considered for parole on his STG/RGT dates, violated his Eighth Amendment right against cruel and unusual punishment. It is well established that requiring an inmate to serve his entire sentence does not constitute cruel and unusual punishment. *See Preston v. Hughes*, No. 97-6507, 1999 WL

107970, at *2 (6th Cir. Feb. 10, 1999); *Smith v. Heyns*, No. 12-11373, 2013 WL 3944474, at *9 (E.D. Mich. July 21, 2013). The denial of parole or parole consideration is a disappointment rather than a punishment of cruel and unusual proportions. *See Carnes v. Engler*, No. 03-1212, 2003 WL 22177118, at *3 (6th Cir. Sept. 19, 2003) (denial of parole does not does not implicate the Eighth Amendment); *Smith*, 2013 WL 3944474, at *9 (citations omitted). Likewise, "[t]he law is clear that limitations on, or the denial of, . . . rehabilitation programs do not inflict unnecessary or wanton pain and therefore do not constitute cruel and unusual punishment." *Smith*, 2013 WL 3944474, at *9 (quoting *McQuillion v. Rushen*, 639 F. Supp. 420, 424 (N.D. Cal. 1986)). Therefore, neither Defendants' alleged failure to provide Plaintiff with Phase 2 drug programming nor his resulting ineligibility for early parole consideration raises a claim under the Eighth Amendment. *Id.*; *see also Moore v. Mich. Dep't of Corr.*, No. 1:07–cv–756, 2007 WL 3124649, at *3 (W.D. Mich. Oct. 25, 2007).

C.    *First Amendment Retaliation*

Plaintiff claims that Defendant Tribley had him transferred to OCF from JCS in retaliation for grievances filed and complaints made against staff in 2006, when Plaintiff was incarcerated at the Newberry Correctional Facility and Tribley was the Assistant Deputy Warden. Plaintiff alleges in his complaint that he made "substantial complaints of racism staff corruption and assault" (Compl., ¶ 64, Page ID#22), however, the only grievance specifically referenced by Plaintiff concerns alleged misinformation in Plaintiff's CSX-175 Program Classification Report. In the Step I grievance, filed on June 6, 2006, Plaintiff claimed that he did not have an RGC (Reception and Guidance Center) recommendation for a GED as stated in the report. (*See* Step I Grievance, Ex. J, docket #1-3, Page ID#97). In addition, Plaintiff maintained that he did not have a RGC

-11-

recommendation for "SAS2" and "SAS3" because those drug rehabilitation programs did not exist when he entered the system. (*Id.*) The Step I grievance was reviewed by Defendant Tribley on June 16, 2006. (*Id.*) As a result of the grievance process, Plaintiff's Program Classification Report was amended to reflect that there was no RGC recommendation for a GED. (*See* Third Step Grievance Response, docket #1-3, Page ID#98.) However, the Step III grievance respondent concluded that the information regarding Plaintiff's SAS recommendations/completions would remain in the ECG recommendation section of the report.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Assuming Plaintiff can satisfy the first two requirements for a claim of retaliation, he fails to allege sufficient facts showing a causal connection between the 2006 grievance and Plaintiff's transfer in 2012. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive

'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).

   Plaintiff's claim of retaliation is wholly conclusory. Six years passed between the time Defendant Tribley reviewed Plaintiff's grievances at NCF in 2006 and Plaintiff's transfer to OTF in 2012. As an Assistant Deputy Warden at NCF, Tribley likely reviewed hundreds, if not thousands, of prisoner grievances per year. The grievance provided by Plaintiff was not written against Tribley, nor did it allege that Tribley had engaged in any improper conduct toward Plaintiff. It is implausible that Tribley would remember Plaintiff's grievance(s) let alone hold a six-year grudge against him. Moreover, Tribley informed Plaintiff that he was transferred to OTF to coordinate the Legal Writer Program and Plaintiff admittedly worked in that capacity while incarcerated at OTF. Because Plaintiff has not presented any facts whatsoever to support his conclusion that Tribley transferred him to OTF for filing grievances at NCF, he fails to state a claim against her. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[3]

---

[3]The Court further notes that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).

II.  **Denial of Access to Library with Legal and Religious Materials**

A.  *First Amendment Access to the Courts*

Plaintiff claims that Defendant Janssen violated his First Amendment right of access to the courts when he denied him access to the law library, where Plaintiff intended to research a class action lawsuit being filed by Michigan prisoners that were members or potential members of the MTSA.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  Plaintiff

-14-

does not make any allegations whatsoever that Janssen's conduct resulted in actual injury to the MTSA class action that Plaintiff intended to research that day. Consequently, Plaintiff fails to state an access to the courts claim against Janssen.

### B. *First Amendment Freedom of Religion*

Plaintiff further claims that, by denying him access to the law library with his personal religious materials, Defendant Janssen violated his First Amendment right to practice his religion. At this stage of the proceedings, Plaintiff's allegations are sufficient to warrant service of Plaintiff's First Amendment free exercise claims against Defendant Janssen.

### C. *Fourteenth Amendment Due Process*

Plaintiff contends that his due process rights were violated in the proceedings on his Class II misconduct charge for insolence. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th

-15-

Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct conviction.

D.     *Retaliation*

Plaintiff alleges that Janssen retaliated against him for explaining his constitutional rights by writing a false misconduct against Plaintiff for violating school rules. Plaintiff claims that Defendants Janssen and Waite engaged in further retaliatory conduct when they conspired to charge him with a second misconduct after he was found not guilty of the first misconduct. At this stage of the proceedings, Plaintiff's allegations are sufficient to warrant service of Plaintiff's retaliation claim against Defendants Janssen and Waite.

E.     *Eighth Amendment*

Plaintiff also raises an Eighth Amendment claim in connection with the library incident. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*,

452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff does not allege that he faced a serious risk to his health or safety. The denial of access to the library with his personal religious materials clearly does not constitute the type of extreme deprivation protected by the Eighth Amendment. Moreover, the filing of a false misconduct charge itself does not violate the Eighth Amendment. *See Tillman v. Huss*, No. 1:13-cv-297, 2013 WL 4499228, at *11 (W.D. Mich. Aug. 19, 2013); *see also Williams v. Reynolds*, No. 98-2138, 1999 WL 1021856, at *2 (6th Cir. Nov. 3, 1999) ("[N]either verbal harassment or threats nor the filing of a false misconduct report constitute punishment within the context of the Eighth Amendment."); *Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001) (holding that punishment on the basis of a false misconduct report does not state an Eighth Amendment claim). Plaintiff, therefore, fails to state an Eighth Amendment claim.

F.      *Defendants Suzik, Quigley and Tribley*

Plaintiff contends that Defendants Suzik, Quigley and Tribley were apprised of the violations committed by Janssen and Waite through Plaintiff's misconduct appeal and grievance, but

-17-

failed to take reasonable actions to protect his constitutional rights. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Suzik, Quigley and Tribley engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### III.    **Violations of state law**

In addition to his federal claims, Plaintiff asserts various violations of state law and MDOC policy throughout his complaint. Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not

-18-

rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Moreover, Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Tribley, Heyns, Johnson, Quigley, Kivisto, Veda, Buck and Suzik will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve Plaintiff First Amendment retaliation claim against

Defendants Janssen and Waite and Plaintiff's First Amendment free exercise claim against

Defendant Janssen.

An Order consistent with this Opinion will be entered.


Dated: <u>December 5, 2013</u>                              <u>/s/ Robert Holmes Bell</u>_____
                                                            ROBERT HOLMES BELL
                                                            UNITED STATES DISTRICT JUDGE