UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

HOWARD JACK-BEY,

        Plaintiff,          Case No. 2:13-cv-216

v.          Honorable Robert Holmes Bell

LINDA TRIBLEY et al.,

        Defendants.
_____/

**OPINION**

        Plaintiff Howard Jack-Bey Jr., an inmate currently confined at the Carson City Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Michigan Department of Corrections (MDOC) Director Daniel Heyns, Central Facilities Administrator Daphne Johnson, and the following Ojibway Correctional Facility (OCF) employees: Warden Linda Tribley, Deputy Warden Daniel Quigley, Classification Director J. Kivisto, Assistant Resident Unit Supervisor M. L. Veda, Shar Buck, Corrections Officer (Unknown) Janssen, and Lieutenants (Unknown) Waite and G. Suzik.

        On December 5, 2013, the court ordered partial service of Plaintiff's complaint. In the opinion, the court summarized Plaintiff's factual allegations:

> Plaintiff was convicted in the Wayne County Circuit Court of four counts of assault with intent to rob while armed, MICH. COMP. LAWS § 750.89, and one count of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. He was sentenced on February 26, 1990, to concurrent prison terms of ten to twenty years for the assault convictions and a consecutive two-year term for the felony-firearm conviction. During his subsequent incarceration, Petitioner was

convicted in the Muskegon County Circuit Court of possession of a weapon in prison. On May 25, 1994, Petitioner was sentenced as an habitual offender, MICH. COMP. LAWS § 769.12, to imprisonment of fifteen to thirty years.

During the early years of his incarceration, Plaintiff forfeited a substantial number of Good Time/Disciplinary Credits as the result of major misconduct convictions. After many years of being major misconduct free, Plaintiff was granted restoration of all available Good Time/Disciplinary credits. After restoration of the credits, Plaintiff had a Suggested Good Time/Disciplinary Release (STG) date of November 27, 2012, a Regular Good Time/Disciplinary Release (RTG) date of February 19, 2013 and a calendar minimum of May 29, 2015. (*See* 1/12/12 Time Review and Disposition Report, docket #1-4, Ex. O, Page ID#116.) Plaintiff contends that he had a liberty interest in being interviewed by the parole board before his first STG date. At the time his credits were restored, Plaintiff was incarcerated at the Lakeland Correctional Facility (LCF). Plaintiff alleges that after the restoration of his Good Time/Disciplinary Credits, LCF Warden Carol Howes indicated that she would recommend him for early parole consideration[1] and further advised that Plaintiff would be transferred to Jackson Cooper Street Correctional Facility (JCS) for a parole interview. Plaintiff was transferred to JCS on February 22, 2012.

While at JCS, Plaintiff continued to pursue early consideration by the parole board. Plaintiff believed that he was making progress toward that goal when he was informed on May 9, 2012, that he was being transferred to OCF. Plaintiff was unhappy about the transfer because he believed that prisoners only were sent to the Upper Peninsula as punishment for bad behavior and it would be a hardship on his wife and mother for him to be so far away. Upon his arrival at OCF, Plaintiff was informed that he was transferred there at the request of Defendant Warden Tribley to facilitate the Legal Writer Program. Plaintiff spoke with Tribley and explained that he did not want to be at OCF. She responded, "You've had your visits, either you work the legal writer assignment or you just sit here and suffer, it's your choice, either

---

[1] Under Michigan law, habitual offenders cannot be paroled before the expiration of their calendar minimum without the approval of the sentencing judge. *See* MDOC Policy Directive (PD) 03.01.102(A)(2) (eff. 8/1/1988). In order for a prisoner to seek parole consideration before the calendar minimum, MDOC policy provides:

> Staff shall instruct prisoners that they should contact their respective Program Classification committee or classification Director, and not the sentencing court, if they believe their case warrants parole consideration prior to the calendar minimum. If supported by the classification staff and by the Warden, the case shall be referred by the Warden to the Parole Board for consideration.

PD 03.01.02(H) (emphasis in original).

2

way you are here for the duration." (Compl., ¶ 35, Page ID#13.) Plaintiff decided to accept the work assignment, rather than suffer the consequences of being placed on unemployable status.

Plaintiff submitted requests to Defendant Tribley on May 31, 2012 and July 2, 2012, for a recommendation for early parole consideration. (*See* Requests to Linda Tribley, Ex. A, docket #1-3, Page ID##59-61.) Plaintiff received a response from Tribley on August 16, 2012, stating that Plaintiff was not eligible for removal from habitual status until he completed the Phase 2 drug abuse program. On July 25, 2012, Plaintiff submitted another request concerning early parole consideration to Defendant Kavisto. (*See* Request to Kivisto, Ex. B, Page ID#63.) Kavisto returned the request to Plaintiff on July 30, stating that Plaintiff had to complete the Phase 2 drug program. (*See* Kivisto Response, Ex. C, Page ID#65.) Plaintiff contends that Phase 1 and 2 did not exist when he was incarcerated in 1990, and that changing or adding new program requirements violates MDOC policy.

Notwithstanding his objection to the Phase 2 requirement, Plaintiff sought admission to the program and was informed that he was on the waiting list. Plaintiff filed a Step I grievance concerning the matter. Defendant Veda responded at Step I, stating that enrollment in the Phase 2 program is based on ERD/Calendar minimum dates and that there was no basis for moving Petitioner ahead of other prisoners who had earlier release dates than Plaintiff's calendar minimum of May 29, 2015. In addition to filing grievances, Plaintiff sent a request for Declaratory Ruling to Defendants Heyns and Johnson. (*See* Request for Declaratory Ruling, Ex. H, Page ID##90-91.) Plaintiff's request was denied on the ground that a prisoner's release on parole is discretionary with the parole board and that there was no right to parole. (*See* Response to Request for Declaratory Ruling, Ex. I, Page ID#94.)

Plaintiff concedes that he has no right to be released on parole, but maintains that he has a liberty interest in being considered for parole on his SGT/RGT dates. Plaintiff contends that by denying him access to the Phase 2 drug abuse programming that would allow him to be considered for release on his SGT/RGT dates, Defendants Tribley, Heyns, Johnson, Kivisto, Veda and Buck violated his Fourteenth Amendment due process rights and his Eighth Amendment right against cruel and unusual punishment.[2] Plaintiff further claims that Defendant Tribley had him transferred to OCF from JCS in retaliation for grievances filed and complaints made against staff in 2006, when Plaintiff was incarcerated at the Newberry Correctional Facility and Tribley was the Assistant Deputy Warden.

On July 28, 2012, Plaintiff was scheduled for the general library, which is located in the OCF school building. Plaintiff brought a folder of materials for

---

[2]Plaintiff claims that as of mid 2012, Phase 2 programming no longer is available at OCF.

purposes of reading and studying his school materials from the University of the Moorish Science Temple of America (UMSTA) and researching a Moorish Science Temple of America (MSTA) class action lawsuit. When Plaintiff arrived, Defendant Janssen instructed Plaintiff to step forward to officer's desk for a shakedown. Janssen looked through the folder and told Plaintiff that he could not bring in any personal materials. Plaintiff told Janssen that he was violating Plaintiff's right to research and study his religion and the class action lawsuit. Defendant Janssen allegedly became angry and responded, "I don't care sue me." (Compl., ¶ 75, Page ID#25.) Plaintiff told Janssen that he was going to file a grievance and left the building.

The following day, Plaintiff learned that Defendant Janssen wrote a Class III Misconduct Report against Plaintiff for violating a posted rule. (*See* Class III Misconduct Report, Ex. BB, docket #1-5, Page ID#172.) According to the report, Plaintiff violated school rule #2, which states that no personal items are allowed in the school. Defendant Waite was the reviewing officer for the misconduct charge. The misconduct hearing was conducted on July 30, by Hearing Officer P. Ross. Ross found Plaintiff "not guilty" of the charge because Plaintiff was not going to school, but to a library call-out where personal paperwork was permitted. (*See* Class III Misconduct Hr'g Report, Ex. BB, Page ID#176.)

Later on July 30, Plaintiff was informed by Defendant Waite that Defendant Janssen wrote a Class II Misconduct Report against Plaintiff for insolence arising from the same incident on June 28. (*See* Class II Misconduct Report, Ex. AA, docket #1-4, Page ID#168.) According to the report, Plaintiff spoke to Janssen in a loud and angry tone threatened to sue him for "big money." (*Id*.) The Class II Misconduct Report was dated July 29, 2012, but Plaintiff contends that Janssen wrote it on July 30, after Plaintiff was found "not guilty" of the first charge. Plaintiff asserts that the misconduct violated MDOC policy requiring that the misconduct report be written as soon as possible after the violation occurs. Plaintiff claims that Defendants Janssen and Waite conspired to fabricate the Class II misconduct charge in retaliation for Plaintiff's verbal complaints and grievance against Janssen. Following a hearing on August 8, 2012, the hearing officer, Defendant Suzik, found Janssen's statement to be credible and found Plaintiff guilty of the offense. (See Class II Misconduct Hr'g Report, Ex. AA, Page ID#169.) Plaintiff was sanctioned with three days' loss of privileges. Plaintiff appealed the decision to Defendant Quigley, who denied the appeal on August 20, 2012. Plaintiff filed a grievance against Defendants Janssen, Waite, Suzik and Quigley, but it was rejected as non-grievable because it concerned a misconduct conviction. Plaintiff appealed to Step III, claiming staff corruption, retaliation and due process violations.

Plaintiff claims that Defendant Janssen violated his First Amendment rights of access to the courts and to practice his religion when he denied Plaintiff access to the law library. He alleges that Janssen retaliated against him for attempting to resolve the matter by writing a false misconduct against him. Plaintiff claims that

4

> Defendants Janssen and Waite engaged in further retaliatory conduct when they conspired to charge him with a second misconduct after he was found not guilty of the first misconduct. Plaintiff contends that Defendants Suzik, Quigley and Tribley were apprised of the violations committed by Janssen and Waite, but failed to take reasonable actions to protect Plaintiff's constitutional rights. In addition, Plaintiff claims that his due process rights were violated in the proceedings on the Class II misconduct charge, for which he was found guilty. Plaintiff also asserts a violation of his Eighth Amendment right against cruel and unusual punishment and state law.

*See* docket #9, pp. 2-7 of 20.

After reviewing Plaintiff's complaint, the Court dismissed Plaintiff's claims against Defendants Tribley, Heyns, Johnson, Quigley, Kivisto, Veda, Buck and Suzik, and ordered service of Plaintiff' First Amendment retaliation claims against Defendants Janssen and Waite, and Plaintiff's First Amendment free exercise claim against Defendant Janssen. *Id.* at pp. 19-20 of 20.

Presently before the Court is the Motion for Summary Judgment filed by Defendants Janssen and Waite pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing*

*Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Initially, Defendants assert that Plaintiff failed to exhaust his administrative remedies with regard to his claim that his misconduct was retaliatory. A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and

that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Prisoners commonly file grievances pursuant to policy of the Michigan Department of Corrections to exhaust administrative remedies. For example, a prisoner may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement which directly affect the grievant." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (effective 4/28/03). As noted above, Plaintiff is asserting that Defendant Janssen retaliated against him by charging him with two misconducts. Defendant Waite reviewed the misconduct charges with Plaintiff. Plaintiff was found "not guilty" of the first misconduct ticket, and was found guilty of the second ticket.

As noted by Defendants, decisions made in the prison hearings division are non-grievable. Policy Directive 03.02.130, ¶ F(1). Therefore, the grievance procedure was not available to Plaintiff. Instead, Plaintiff was required to "file a motion or application for rehearing in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." *See* MICH. COMP. LAWS § 791.255(1). Defendants assert that Plaintiff failed to raise retaliation during the hearings on his misconduct tickets and that, as a result, he has not exhausted his remedies with regard to his claims that the tickets were retaliatory. In support for their contention that Plaintiff was required to raise retaliation during his misconduct hearing, Defendants cite *Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011).

This court previously addressed the application of *Siggers* to a similar case:

> Defendant cites *Siggers v. Campbell,* 652 F.3d 681, 693–94 (6th Cir.2011), for the proposition that "A prisoner claiming that the issuance of a major misconduct violation constituted retaliation must raise that issue at the misconduct hearing." (Def.'s Obj. 2, ECF No. 29.) The portion of *Siggers* that Defendant cites, however, concludes that the plaintiff in that case had not exhausted his administrative remedies because the retaliation of which he complained at his hearing was different from the retaliation he presented to the court. *Siggers,* therefore, does not stand for the proposition for which Defendant cites it. Even if it did stand for such a proposition, the Misconduct Hearing Report reveals that Plaintiff at least raised the issue that the misconduct ticket was fabricated.

*Colvin v. Pederson*, 2014 WL 2616499, 1 (W.D. Mich. 2014).

With regard to the first misconduct ticket, Plaintiff was found not guilty of a class III minor misconduct. Hearing Officer Ross ruled that because Plaintiff was on a library call out and was thus allowed to possess personal paperwork. Hearing Officer Ross concluded that Plaintiff had not violated a posted rule. *See* docket #42-2, pp. 2-3 of 3. Plaintiff asserts that he did argue retaliation during the hearing by Hearing Officer Ross, although this argument is not noted in the hearing report. According to Plaintiff, Hearing Officer Ross told him that it was not necessary to make such a record because it was a minor misconduct hearing, the misconduct was improper, and that he was finding Plaintiff "not guilty." *See* docket #53, p. 4 of 8.

With regard to the second minor misconduct ticket, Plaintiff was found guilty following a hearing. The misconduct hearing report for the second misconduct ticket fails to show that Plaintiff raised retaliation as a defense to this misconduct ticket. *See* docket #42-3, pp. 2-3 of 3. However, Plaintiff asserts that he informed Hearing Officer Suzik of the retaliation, but that Suzik failed to include that in the record. In addition, Plaintiff contends that while *Siggers* concerned a class I major misconduct, the misconducts at issue in the instant case were class II and III minor

8

misconducts, which are not subject to the same procedural requirements. *See* MDOC Policy Directive 03.03.105, eff. 04/09/12.

As in *Colvin*, Plaintiff in the instant case asserted that the misconduct tickets were fabricated during the hearings. Moreover, as noted by Plaintiff, the tickets were not major misconduct tickets and were not subject to the same due process protections. Plaintiff contends that the hearing record for such misconduct tickets is cursory and does not include the detail required for a finding of guilty on a class I major misconduct ticket. The court concludes that for the reasons stated by the court in *Colvin*, Plaintiff exhausted his administrative remedies on his retaliation claims.

Defendants assert that with regard to the second misconduct ticket, Plaintiff's retaliation claim is properly dismissed because he was found guilty of the misconduct following a hearing. Defendants are correct. Where plaintiff is ultimately found guilty of misconduct charges, plaintiff cannot state a claim for retaliation arising from the misconduct charges. *Wilson v. Phipps*, No. 97-1661, 1998 WL 384560, at *1 (6th Cir. June 18, 1998) (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam)). Therefore, Plaintiff's retaliation claim regarding the second misconduct ticket written by Defendant is properly dismissed.

Defendants next assert that Plaintiff's retaliation claims with relate to the first misconduct ticket by Defendant Janssen are properly dismissed because he was not engaged in protected conduct. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least

in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants assert that Plaintiff was not engaged in protected conduct when he received the misconduct ticket by Defendant Janssen on July 28, 2012. Conduct that violates a legitimate prison regulation is not protected. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). With regard to this misconduct ticket, Plaintiff alleges that on July 28, 2012, he was scheduled for the general library, which is located in the OCF school building. Plaintiff brought a folder of materials for purposes of reading and studying his school materials from the University of the Moorish Science Temple of America (UMSTA) and researching a Moorish Science Temple of America (MSTA) class action lawsuit. Defendant Janssen looked through the folder and told Plaintiff that he could not bring in any personal materials. Plaintiff complained that Defendant Janssen was violating his right to research and study his religion and research a class action lawsuit, and Defendant Janssen told Plaintiff that he did not care and Plaintiff could sue him. A review of the misconduct ticket shows that Defendant Janssen wrote the ticket because Plaintiff lacked authorization to be in the school with his personal items. *See* docket #42-2, p. 2 of 3. The class II misconduct hearing report gives the reason for the "not guilty" finding as follows: "School Rule #2 states no personal material in the school, however Jack-Bey #168807 was going to a library call-out where personal paperwork is permitted."

Defendant Janssen now asserts that at the time Plaintiff received the first misconduct ticket, he was attempting to study religious materials with another member of the Moorish Science

10

Temple of America (MSTA), which is a violation of MDOC policy. Defendants assert that Plaintiff did not have a constitutionally protected right to engage in this conduct. In his affidavit, Defendant Janssen stated that on July 28, 2012, Plaintiff and inmate Waiver Watson #200504 attempted to bring MSTA religious materials into the library. Defendant Janssen states that he informed Plaintiff and Watson that they could not bring religious materials into the library and wrote Plaintiff a misconduct ticket for violation of posted rules. During this time, OCF provided a MSTA service and study time for members to review their religious materials. However, MSTA members were not allowed to study their materials together in the library. *See* docket #43, ¶¶ 3-5, pp. 2-3 of 3.

On the face of the misconduct ticket and hearing report, it appears that Defendant Janssen mistakenly thought Plaintiff was on a school call-out and could not possess religious materials. If true, this does not support Plaintiff's claim that the ticket was retaliatory. However, this is contradicted by the version of events set forth by Defendant Janssen in his affidavit. In addition, Defendants do not identify any specific rule which prohibits inmates from studying MSTA materials together in support of Defendant Janssen's affidavit. Because Defendant Janssen's affidavit sets forth a different version of events than that set forth in the ticket, it raises a question regarding Defendant Janssen's motive for executing the affidavit and actually creates an issue of fact with regard to the events leading up to the misconduct ticket. The court concludes that Plaintiff has a constitutionally protected right to exercise his religious beliefs and to do legal research. There is an issue of fact regarding Defendant Janssen's motivation in writing the misconduct ticket on Plaintiff. Therefore, Defendant Janssen is not entitled to summary judgment on Plaintiff's claim that the ticket was retaliatory.

With regard to Defendant Waite, there is no indication that he had any involvement with the misconduct ticket prior to his review of the ticket after it had been written by Defendant Janssen. Because it does not appear as if Defendant Waite was personally involved in any retaliatory conduct with regard to this ticket, he is entitled to summary judgment on this claim. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000).

In his complaint, Plaintiff also claims that, by denying him access to the law library with his personal religious materials, Defendant Janssen violated his First Amendment right to practice his religion. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

  2.  are there alternative means of exercising the right that remain open to prison inmates;

  3.  the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

  4.  whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

  Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

  In this case, it is not clear that there was any actual policy prohibiting Plaintiff from possessing or studying religious materials in the OCF library. In support of his response to the motion for summary judgment, Plaintiff attaches a copy of the OCF Library Rules, which was revised in May of 2012, and signed by Deputy Warden Quigley on May 31, 2012. *See* docket #54-1, pp. 2-3 of 18. The rules do not contain any prohibition on studying religious materials during library. *Id.* at p. 2 of

13

18. Plaintiff also includes MSTA publications indicating a need for daily study in order to properly practice the religion. *Id.* at pp. 10-18 of 18.

Defendants have failed to offer any evidence showing the existence of a rule prohibiting Plaintiff from studying his religion during library, or showing the existence of a valid, rational connection between the prison regulation and a legitimate governmental interest. Therefore, Defendant Janssen is not entitled to summary judgment on this claim.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard

to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated with regard to his claim that the second misconduct ticket was retaliatory, Defendants are entitled to qualified immunity on that claim.

However, as noted above, there is an issue of fact with regard to whether Defendant Janssen retaliated against Plaintiff in writing the first misconduct ticket, as well as whether Defendant Janssen violated Plaintiff's First Amendment right to freely exercise his religious beliefs. Plaintiff has a clearly established right to be free from retaliation and to practice his religion. Therefore, Defendant Janssen is not entitled to qualified immunity on these claims.

In light of the foregoing, the court concludes that Defendants Janssen and Waite are entitled to summary judgment with regard to Plaintiff's claim that the second misconduct ticket, written on July 30, 2012, was retaliatory. However, Defendant Janssen is not entitled to summary judgment on Plaintiff's claims that the July 28, 2012, misconduct ticket was retaliatory and that Defendant Janssen violated his First Amendment right to freely exercise his religious beliefs. Accordingly, Defendants' Motion Summary Judgment (Docket #42) will be granted, in part, and Plaintiff's claims against Defendant Waite will be dismissed.

An Order consistent with this Opinion will be entered.


Dated: February 26, 2015              /s/ Robert Holmes Bell
                                       ROBERT HOLMES BELL
                                       UNITED STATES DISTRICT JUDGE